IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JUDITH THOMAS,**
**Respondent Below, Petitioner**

FILED
**September 4, 2024**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-547**        (Fam. Ct. Kanawha Cnty. No. 02-D-2143)

**STEVEN THOMAS,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

The Petitioner, Judith Thomas, appeals the Family Court of Kanawha County's November 7, 2023, order denying her motion to reconsider and vacate its September 27, 2023, final order which found her in contempt. The family court held that Ms. Thomas failed to purge herself from a prior finding of contempt and failed to prove that any newly discovered facts exist which would warrant vacation of the final order. Respondent Steven Thomas responded in favor of the family court's decision.[1] Ms. Thomas filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties, both attorneys, were married in 1984 and divorced by an order entered January 11, 2006. They share two grown children. A temporary order was entered on June 13, 2003, which held that both parties were restrained and enjoined from "disposing, alienating, encumbering, or in any manner misappropriating any of the assets of the parties [. . .] until the same can be equitably distributed between the parties." Their final amended divorce order, entered on May 13, 2008, directed the following:

> The marital estate shall be equalized by the entry of a Qualified Domestic Relations Order ["QDRO"] granting [Mr. Thomas] an interest in [Ms. Thomas's] Accordia/Wells Fargo pension in the amount of $40,542.24. [Mr. Thomas] or [Mr. Thomas's] counsel shall be responsible for the preparation for entry of the Qualified Domestic Relations Order to which [Ms. Thomas] shall cooperate fully.

---

[1] Both parties are self-represented.

Ms. Thomas failed to provide information regarding her retirement account to facilitate the entry of a QDRO as required by the May 13, 2008, final divorce order. Mr. Thomas then filed a motion to show cause and a hearing on his motion was held on May 9, 2012. At that hearing, Ms. Thomas testified that she had withdrawn all monies from her retirement account. Mr. Thomas argued that the June 13, 2003, temporary order restrained and enjoined the parties from disposing of any marital assets. The family court found that Ms. Thomas violated the temporary order by disposing of her retirement account, thereby preventing equitable distribution from being completed. The family court entered judgment in the amount of $40,542.24 against Ms. Thomas and ordered her to produce unredacted tax returns to Mr. Thomas from 2002 through 2011 and all tax distribution statements from her retirement account within thirty days. The final order was entered on May 31, 2012.

Although Ms. Thomas did produce some of the required tax returns, she failed to produce the unredacted tax returns for years 2010 and 2011 and tax distribution statements as ordered by the family court. Thereafter, Mr. Thomas filed a renewed motion to show cause and a hearing was held on March 25, 2013. Shortly prior to the hearing, Ms. Thomas produced a copy of her 2011 tax returns. By order entered April 8, 2013, the family court directed Ms. Thomas to produce the following unredacted documents: (1) documents reflecting all retirement accounts maintained by Ms. Thomas; (2) documents reflecting the deposit of all distributions and loans from all retirement accounts; (3) documents reflecting the expenditure of all funds originating from all retirement accounts; and (4) a copy of her 2010 tax returns with supporting schedules and forms.

Further show cause proceedings were held on January 17, 2014. At that hearing, Ms. Thomas produced only incomplete documents from her Wells Fargo retirement account from 2002 through 2007 and a single statement from a Morgan Stanley account for the month of July of 2011. A final order was entered on February 12, 2014, wherein the family court held that Ms. Thomas had not complied with its prior orders and directed her to produce the remaining documents to Mr. Thomas by February 17, 2014.

Ms. Thomas then produced redacted copies of bank statements showing deposits for some of the time periods requested by the family court, as well as completely redacted information regarding the checks written from her account. Another show cause hearing was held on June 5, 2014, during which the family court found that Ms. Thomas had begun withdrawing money from the retirement account beginning in June of 2008 (the month following the entry of the final divorce order) through October of 2009. Also at the June 5, 2014, hearing, Ms. Thomas again testified that she had withdrawn all money from her retirement accounts and that she had no assets in any retirement account to satisfy the court's equitable distribution order. The family court, by order entered July 29, 2014, found Ms. Thomas in contempt of both the 2003 temporary order and the 2008 amended final

2

divorce order. Judgment was assessed against Ms. Thomas in the amount of $57,767.16[2]. She was ordered to purge her contempt by paying to Mr. Thomas her 2013 tax refund plus $250 per month until the judgment was satisfied. The court stated in its final order that Ms. Thomas was "guilty of committing a defalcation of her fiduciary duty to hold her retirement account assets to enable distribution of the marital estate," but did not specifically state that she was found to be in willful or contumacious contempt. The final order also stated that, "[u]pon entry of the *Amended Final Order* on May 13, 2008, [Ms. Thomas] held her retirement account assets in constructive trust for Petitioner, to the extent necessary to equalize distribution of the marital estate."

Thereafter, Ms. Thomas filed an emergency petition to modify income withholding, due to a monthly child support obligation that was being withheld from her monthly disability income of $2,900 in a separate case. On January 8, 2015, a hearing was held on Ms. Thomas's petition for modification. The family court found that, due to the contempt judgment assessed against Ms. Thomas and her limited monthly income, child support was reduced but Ms. Thomas was ordered to continue paying the $250 per month until further order of the court. The final modification order was entered on January 15, 2015.

In February of 2021, Mr. Thomas filed another renewed motion to show cause for Ms. Thomas's failure to comply with the family court's July 29, 2014, order. A hearing was held on August 17, 2021, where Ms. Thomas argued that the 2014 order was defective because it was not designated as a "final order" containing appeal language. The family court dismissed Mr. Thomas's renewed motion to show cause but held that "[t]o the extent that [Mr. Thomas] seeks enforcement of the Court's [. . .] 2015 *Final Order of Modification* finalizing such relief, the Court will hereinafter entertain such a request upon the filing of a newly verified petition regarding the same."

On October 19, 2022, Mr. Thomas filed another petition for contempt for Ms. Thomas's failure to make the $250 monthly payments. A hearing on the contempt petition was held on March 28, 2023. At that hearing, Ms. Thomas argued that the 2014 order was not valid because it failed to include appeal language. The family court took judicial notice that "the Final Modification Order entered on January 15, 2015, which was a [f]inal [a]ppealable [o]rder, reaffirmed the prior granted judgment and also the remedy of purge." The family court found that Ms. Thomas failed to comply with the terms of the purge order and that she had the ability to pay. The family court further found Mr. Thomas's testimony to be more credible than that of Ms. Thomas. As such, the family court found Ms. Thomas to be in direct contumacious contempt for failure to equalize the marital estate and for failing to abide by the purge order. The final order was entered on September 27, 2023. Ms. Thomas then filed a motion to reconsider and vacate the September 27, 2023, order,

---

[2] The $57,767.16 reflects the original balance of $40,542.24 plus seven percent (7%) interest which accumulated over the course of more than six years.

which was denied by an order entered on November 7, 2023. It is from the September 27, 2023, and the November 7, 2023, orders that Ms. Thomas now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Ms. Thomas raises three assignments of error. First, she asserts that the family court exceeded its authority, abused its discretion, and deprived her of due process by using contrived means and powers of contempt to enforce her compliance with an unenforceable order. More specifically, Ms. Thomas argues that the 2014 order was not appealable because it failed to include appeal language. We disagree. The Supreme Court of Appeals of West Virginia, when dealing with a similar case, has stated,

> While it is true that the subject orders do not contain language indicating they are final and appealable as required by Rule 22(c) of the Rules of Practice and Procedure for Family Court, the Court finds they are final, appealable orders nonetheless. Specifically, each of the orders concern motions that relate back to the enforcement of the final divorce decree, which is undoubtedly a final, appealable order.

*Carrie W. v. Steven W.*, 2015 WL 1244305, at * 2 (W. Va. March 16, 2015) (memorandum decision) (holding that petitioner would have no avenue for appeal when seeking to enforce a family court order if Court ruled otherwise). Therefore, we find no error in the family court's ruling that its January 15, 2015, order "reaffirmed the prior granted judgment."

As her second assignment of error, Ms. Thomas contends that the family court abused its discretion in holding her in contempt without proof that she willfully violated the terms of an enforceable order without justifiable excuse. We disagree. Ms. Thomas, an attorney, had notice upon the entry of the June 13, 2003, temporary order that she was restrained and enjoined from "disposing, alienating, encumbering, or in any manner misappropriating any of the assets of the parties [. . .] until the same can be equitably distributed between the parties." The record reflects that Ms. Thomas began withdrawing money from her retirement in June of 2008, shortly after the entry of the parties' final

4

divorce order, which held that Ms. Thomas owed Mr. Thomas $40,542.24, via the entry of a QDRO. Thereafter, Mr. Thomas had to file multiple petitions for contempt due to Ms. Thomas's failure to provide the documents necessary to prepare the QDRO, as ordered by the family court.

West Virginia Code § 51-2A-9 (2012) states that a family court may,

enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant. Sanctions must give the contemnor an opportunity to purge himself or herself. In selecting sanctions, the court must use the least possible power adequate to the end proposed.

Here, after approximately twenty years of litigation, the family court ordered Ms. Thomas to pay Mr. Thomas $250 per month to purge her contempt. We conclude that the family court not only displayed considerable patience, but fully complied with the provisions of West Virginia Code § 51-2A-9.

As her third assignment of error, Ms. Thomas argues that the family court abused its discretion in creating a purge remedy that requires her payment of a judgment from her social security benefits, in violation of 42 U.S.C. § 407(a) (1998) without determining her present ability to pay. We disagree. Section 407(a) states,

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Here, the family court did not transfer, assign, levy, attach, or garnish Ms. Thomas's social security benefits. Additionally, we note that Ms. Thomas's argument in support of her third assignment of error was stricken from her brief due to her exceeding the page limit after her request to exceed the page limit was refused by this Court.

Accordingly, we affirm the family court's September 27, 2023, and November 7, 2023, orders.

Affirmed.

**ISSUED:** September 4, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear